Case 3:16-cv-01323-NJR-RJD   Document 1   Filed 12/08/16   Page 1 of 6   Page ID #1

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| WILLIS E. JACKSON,               ) | |
|                                  ) | |
| Plaintiff,                       ) | |
|                                  ) | Civil Action No.   **16-cv-01323** |
| vs.                              ) | |
|                                  ) | JURY DEMANDED |
| TRANSITIONAL CENTER, INC. d/b/a  ) | |
| JUVENILE TRANSITIONAL CENTER     ) | |
|                                  ) | |
| Serve at: Bernard R. Polt        ) | |
| 353 N 88th ST (Rear)             ) | |
| Centreville, IL 62203            ) | |
|                                  ) | |
| Defendant.                       ) | |

## COMPLAINT

1.   Plaintiff brings this action under the Age Discrimination in Employment Act (ADEA), 29 U.S.C.§ 621 *et seq.*

2.   Jurisdiction of this Court is founded upon 28 U.S.C. §1331 and 1343.

3.   Venue is proper under 28 U.S.C. §1391(b) because Plaintiff was employed by Defendant in the Southern District of Illinois at the time of his termination.

4.   Plaintiff has satisfied the administrative prerequisites to suit under the ADEA. On or about March 26, 2015, Plaintiff filed a timely charge of discrimination with the Equal Employment Opportunity Commission (EEOC). On September 9, 2016, the EEOC issued to Plaintiff a Notice of Right to Sue, and this lawsuit was filed within ninety days of its issuance.

## PARTIES

5.   Plaintiff is a male citizen of the United States, over the age of 40, residing in St. Clair County, Illinois.

6. Defendant is an Illinois corporation in good standing, qualified to do business and conducting business in the State of Illinois within the jurisdiction of this Court.

7. Defendant is an employer within the meaning of 29 U.S.C. §630(b).

## FACTS

8. Plaintiff began his employment with Transitional Center, Inc. (hereinafter "TCI") in 2004 as a Youth Care Worker.

9. Plaintiff has been continually employed by TCI as a Youth Care Worker since 2004, and Plaintiff has performed his duties in a competent manner at all times while in Defendant's employ.

10. TCI is a 40-bed residential facility in Centreville, Illinois that provides behavioral and psychotherapy treatment to adolescent males with severe emotional and behavioral problems.

11. As a Youth Care Worker, Plaintiff is responsible for supervising residents, participating in and assisting with the residents' day to day activities, organizing and facilitating group activities and therapeutic interactions for the residents, as well as de-escalating behavioral incidents with residents and determining whether and to what degree restraints should be employed.

12. Beginning in approximately 2012, Plaintiff began to serve as a Team Lead and Midnight Supervisor in addition to his Youth Care Worker responsibilities.

13. When he worked as a Team Lead, Plaintiff was responsible for carrying out his duties as a Youth Care Worker as well as supervising the other two Youth Care Workers on his 10-bed unit.

14. When he worked as a Midnight Supervisor, Plaintiff was responsible for supervising all the Youth Care Workers in the facility during the 12am to 8am shift. His duties included managing scheduling issues with the employees, setting standards on how to approach and manage an altercation with a resident, assisting in caring for the residents, and filling out all

necessary paperwork, such as unusual incident reports, in the event a resident needed to be restrained or secluded or in the event a resident eloped.

15. In addition to serving as Team Lead, Midnight Supervisor and Youth Care Worker, Plaintiff was also responsible for training new Youth Care Workers. After a new worker was hired, they were placed with Plaintiff and Plaintiff would show the new worker how to do all of the job duties required of a Youth Care Worker. The new worker would continue to work alongside Plaintiff until Plaintiff and Defendant believed the new worker was ready to work in a unit on their own.

16. Since 2012, Plaintiff has applied for at least four promotional opportunities and has never been selected for the position applied for despite his significant experience and dedication to the TCI residents.

17. Most recently, Plaintiff applied for the position of Unit Coordinator on or about December 1, 2014.

18. The Unit Coordinator is responsible for supervising the employees and residents on two of TCI's four units.

19. The pay for the Unit Coordinator position is approximately double what Plaintiff makes as a Youth Care Worker, e.g., in excess of $20.00 per hour.

20. Plaintiff was well suited for this position as he had experience as both a Team Lead and Midnight Supervisor.

21. In addition to Plaintiff's leadership experience, he had a good rapport with the residents, Youth Care Workers and other Unit Coordinators.

22. It was well known that Plaintiff was dedicated to his residents and the employees he supervised as Plaintiff almost always showed up for his shift early and stayed late. He also attended and contributed to all the mandatory weekly meetings.

23. Despite Plaintiff's experience and dedication to TCI and its residents and employees, Plaintiff was not selected for the Unit Coordinator position to which he applied in December 2014.

24. Instead, the position was given to DeMarrio Hall, a Youth Care Worker who was trained by Plaintiff, who had only been employed by TCI for three years and who had no prior experience working in a residential facility like TCI.

25. On information and belief, DeMarrio Hall was working at Hoyelton Transitional Living Program in Belleville, Illinois in addition to TCI at the time of his promotion.

26. On information and belief, the Unit Coordinator position was only available to individuals who had a college degree or at least five years of experience working in a residential facility like TCI.

27. Plaintiff does not have a college degree. However, in December 2014, Plaintiff had over 60 credit hours of college credit, had served in the military for six years and had over ten years of experience working for TCI.

28. At the time of his promotion, Mr. Hall did not have a college degree and had only three years of relevant experience.

29. After Plaintiff learned he did not receive the promotion, Plaintiff met with Bernie Polt, TCI's CEO, to discuss how Plaintiff could improve his chances of receiving a promotion in the future.

30. When Plaintiff met with Mr. Polt, Plaintiff was informed that Mr. Holt did not interview any of the applicants for the Unit Coordinator position. Mr. Polt told Plaintiff he believed Plaintiff was a great worker and suggested that Plaintiff speak with Marcus Lathan about why Plaintiff was not given the Unit Coordinator position.

31. Prior to December 2014, Marcus Lathan was a Unit Coordinator for TCI. In addition to his job as Unit Coordinator at TCI, Mr. Lathan was also employed as a "Sex Offender Tracker" for the St. Louis County Family Courts and also worked at the Juvenile Transitional Academy in Centreville, Illinois.

32. In December 2014, TCI promoted Mr. Lathan to the position of Residential Director. Mr. Lathan conducted interviews for his replacement as Unit Coordinator and ultimately selected DeMarrio Hall for the position.

33. When Plaintiff met with Mr. Lathan to discuss why Plaintiff was not selected for the Unit Coordinator position, he was informed by Mr. Lathan that TCI "wanted to go with someone younger."

34. At the time of his application to the Unit Coordinator position, Plaintiff was 53 and Mr. Hall was 32.

## COUNT I
(Discrimination under the ADEA)

35. Plaintiff hereby incorporates as if set out fully herein all previous paragraphs of this Complaint.

36. Defendant's actions as described above were motivated in relevant part by Plaintiff's age, in violation of the ADEA, 29 U.S.C. §§621, *et seq*.

37. Defendant's conduct was intentional, malicious and in reckless indifference to Plaintiff's federally protected rights.

38. As a direct result of Defendant's conduct, Plaintiff has suffered and will continue to suffer lost wages and other economic benefits of employment.

39. As a direct result of Defendant's conduct, Plaintiff has incurred and will continue to incur attorney's fees, costs and other expenses in connection with this matter.

WHEREFORE, Plaintiff demands judgment in his favor and all relief to which he is entitled, including lost wages and benefits, liquidated damages, equitable relief, attorneys' fees and the costs of this litigation, and such other relief as this Court finds appropriate in the circumstances.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff respectfully demands a trial by jury on all issues triable by a jury.

Respectfully submitted,

_/s/ Sarah Jane Hunt_
Thomas E. Kennedy, III #44617MO
Sarah Jane Hunt #63899MO
Law Offices of Thomas E. Kennedy, III, L.C.
906 Olive St., Ste. 200
St. Louis, MO 63101
(314) 474-5326 phone
(314) 474-5331 fax
tkennedy@tkennedylaw.com
sarahjane@tkennedylaw.com

***ATTORNEYS FOR PLAINTIFF***